IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CINDY L. RODGERS, | |
| Plaintiff, | 4:08-CV-00430 |
| v. | ORDER |
| HY-VEE, INC., | |
| Defendant. | |

The Court has before it defendant Hy-Vee, Inc's motion for summary judgment, filed November 2, 2009. Plaintiff resisted the motion on December 14, 2009, and defendant filed a reply on December 30, 2009. The motion is fully submitted

I.   BACKGROUND

The following relevant facts either are not in dispute or are viewed in a light most favorable to plaintiff.

A.   Facts Regarding Alleged Harassment

Defendant operates numerous grocery stores in the Midwest. Plaintiff, Cindy Rodgers, began working for defendant at a store located on Valley West Drive in West Des Moines (the "Valley West Store") as a part-time bakery clerk on or about August 1, 2007. Throughout the duration of her employment, plaintiff's immediate supervisor was Paul Stout, the store's bakery department manager.

Plaintiff alleges that in September of 2007, Stout began to make comments to her that were sexual in nature. Pl's App. at 44-45. Stout would tell plaintiff that she was pretty, and

would tell other female employees in her presence that plaintiff was his favorite and that they would never be as good as her. *Id.* Plaintiff also alleges that Stout sought kisses and hugs from her, made puckering faces at her, and rubbed her shoulders. Def's App. at 10 p. 48, 12 p. 59, 13 p. 63 , 26. According to Plaintiff, this type of conduct occurred frequently; however, Stout only rubbed plaintiff's shoulders "probably twice." Pl's App. at 44, ¶ 4; Def's App. at 12 p. 58.

While working in the bakery department, plaintiff claims that Stout often ordered her to retrieve items from bottom shelves. *Id.* at 35. When this was done, Stout would explain that he had sent plaintiff for these items because he liked to see her bend over. *Id.* Stout would also state, "I don't mean to be fresh, but I can't help it with a good looking woman like you around." Def's App. at 26; Pl's App. at 45, ¶ 7. Plaintiff claims to have witnessed Stout throw items on the ground near another bakery store employee so that she would also "have to bend down to pick them up." Pl's App. at 45, ¶ 3.

In addition to the foregoing, plaintiff complains of the following specific acts of conduct as part of her hostile work environment claim:

    a.    On one occasion, plaintiff was working with a male co-worker when Stout confronted her and stated: "I'm going to have to split the two of you up. You're making me jealous." *Id.* at 36;

    b.    Sometime in September or October of 2007, after an elderly customer offered plaintiff a $1 tip for retrieving a carton of milk, Stout asked plaintiff what she would be willing to do in exchange for $100. Pl's App. at 6 p. 38.

    c.    Stout once told plaintiff that she had "flour all over her ass" after she had wiped

        her hands on the back of her black pants.  Pl's App. at 6 p. 40.

d.     Sometime in October 2007, when plaintiff was required to make a delivery in the company's delivery van, Stout told plaintiff "Well, if you'd like, I can go along; but there's no pillow and blanket in the back of the van."  Pl's App. at 6 pp. 40-41.

e.     In mid-October 2007, plaintiff told a male co-worker that he needed a woman to come over and cook for him.  Stout, who had heard this comment, told plaintiff that she could come over to his house, but that "there wouldn't be any cooking involved."  Def's App. at 11 pp. 50-51.

f.     In late October 2007, Stout informed plaintiff that if anything ever happened to his wife, he would have to kill plaintiff's husband so that they could be together.  Def's App. at 10 pp. 46-47.

g.     In early November 2007, plaintiff was followed into the store's freezer room by Stout.  When Stout entered the freezer, he shut the door behind him and stated: "Now I finally have you alone, where I want you."  Def's App. at 9 p. 43.  Plaintiff claims that she felt scared and left the freezer after this comment was made.  *Id.*

h.     In late November 2007, Stout informed plaintiff that there was a children's toy called "Aqua Dots" that acted like a date rape drug when ingested.  Stout asked plaintiff if she would be willing to try "Aqua Dots" for him.  Def's App. at 11 p. 11.

Stout's conduct made plaintiff feel stressed, nervous, uncomfortable, embarrassed,

offended, and fearful for her safety. Pl's App. at 2. Plaintiff asserts that she became sick and cried when she thought about going to work because of the way Stout treated her. Def's App. at 11 pp. 63-64. At one point, plaintiff "turned white" and became physically ill, requiring that she leave work. Pl's App. at 7 p. 79. Plaintiff claims that she ultimately made the decision to discontinue her employment with Hy-Vee because of Stout's alleged conduct. Pl's App. at 7 p. 81.

Plaintiff resigned from her employment on November 24, 2007, without notice, by failing to return to work. Plaintiff had not reported Stout's allegedly harassing conduct to any of her superiors prior to this time.[1] Plaintiff first made mention of Stout's allegedly harassing conduct to Hy-Vee management during a phone conversation with Rick Boney, the assistant store director, after Boney had contacted her to inquire as to the reason for her absence. Def. App. at 14 pp. 66-67.[2]

Plaintiff was contacted by Randy Beimer, the Valley West store director, shortly after her discussion with Boney regarding Stout's alleged harassment. At this time, Beimer informed

---

[1] Plaintiff claims that she complained about Stout's conduct to multiple co-workers. Pl's App. at 45. Plaintiff also asserts that her co-workers witnessed Stout's allegedly harassing conduct on several occasions. Def's App. at 8 pp. 34-36, 11 pp. 50-52, 12 pp.58-60, On the record before the Court, none of the co-workers identified by plaintiff appear to have worked in a managerial or supervisory role during the relevant time frame in question.

[2] Plaintiff claims that she did not report Stout's alleged acts of harassment to a superior prior to her resignation because she "did not think that it would matter and because [she] thought that [she] could handle Stout's harassment." Def's App. at 31. She further asserts that she did not report the alleged acts of harassment to Boney or Randy Beimer, the store director, because she "did not feel comfortable" with them. Def's App. at 7. Plaintiff admits that she has no evidence on which to base a belief that a complaint of sexual harassment would not be taken seriously by Beimer or Boney. Pl's Response to Defendant's Statement of Material Fact at 3, ¶ 22

plaintiff that he did not want to lose her as an employee and that he would be willing to move her to a different department. On the same day as this conversation, Beimer and Boney conducted an investigation into plaintiff's allegations of harassment and terminated Stout's employment. Plaintiff was thereafter contacted by Beimer and advised of Stout's termination. In this conversation, Beimer reiterated that he did not want to lose plaintiff as an employee. Beimer offered plaintiff another position and indicated that she could take some time to think about whether she wished to return. Plaintiff ultimately decided not to return to work because she "felt uncomfortable" and "didn't want to be asked a bunch of questions." Def's App. at 15 p. 71.

During the investigation of plaintiff's allegations, Beimer interviewed Stout. Notes taken from this interview indicate that Stout admitted to engaging in inappropriate conduct. Pl's App. at 48. Stout explained that his conduct was wrong and that he should not have let it happen. *Id.*

Another bakery employee at the Valley West store, Samantha Knoll, was interviewed as part of the store's investigation into Stout's alleged acts of harassment. Beimer's handwritten notes taken from this interview provide:

> I talked to Samantha Knoll and she told me that Paul Stout has made inappropriate comments of a sexual nature to her since her employment started. Samantha stated that she witnessed Paul asking Cindy Rodgers to trade sex for money. At one point Samantha said she heard Cindy say to Paul, about his inappropriate comments, "I am married and I don't appreciate it." Samantha said Paul has rubbed her shoulders a few times, and has seen him rub Ashley Brennecker's shoulders. Samantha said she has seen Paul rub Cindy's shoulders.

Pl's App. at 46. Knoll denies that her interview statements were accurately recorded. *See* Def's Supp App. at 56.[3]

---

[3] In a deposition taken following Knoll's interview with Beimer, Knoll claimed that she had not, in fact, witnessed Stout make inappropriate comments to plaintiff, including the comment regarding an exchange of sexual favors for money. Def's Supp. App. at 56 pp. 6-8.

B.     Facts Regarding the Employment History and Hiring of Paul Stout

Prior to working as a bakery department manager at the Valley West store, Stout worked in a similar capacity at a store located on Grand and Railroad Avenues in West Des Moines (the "Grand Avenue store"). Def's App. at 40, 44a. Records indicate that on October 20, 2005, Stout was discharged from his employment at the Grand Avenue store for violating the store's sexual harassment policy. Def's App. at 51. The discharge stemmed from allegations that Stout had kissed, inappropriately touched, and made inappropriate sexual comments to female employees on multiple occasions. *See* Pl's App. at 53-58.[4]

Following Stout's discharge from the Grand Avenue Store, he was rehired to work as a baker at a Hy-Vee store in Ankeny, Iowa on September 26, 2006. Def's App. at 40, 44a. Stout then applied for the bakery department manager position with the Valley West store.[5] Upon receiving Stout's application for this position, Beimer contacted Jen Book, store director at the Grand Avenue Store, who advised Beimer of the reason for Stout's prior discharge and the

---

Knoll states that she only attempted to relay information to Beimer during the investigation that had previously been provided to her by plaintiff following plaintiff's resignation. *Id.* Knoll further denies ever being the target of sexually inappropriate comments. Def's Supp. App. at 56 p. 7. She does admit, however, to having witnessed Stout rub plaintiff's and Ashley Brennecker's shoulders. Def's Supp. App. at 56 p. 8. She also asserts that Stout rubbed her shoulders, but that she did not find this conduct to be sexually inappropriate. Def's Supp. App. at 56 pp. 7-8.

[4] With regard to incidents of inappropriate sexual contact, it was alleged that Stout touched and pinched female employees on their posterior, reached into employees' pockets, kissed female employees on their necks and lips, and gave female employees hugs. Pl's App. at 53-58. Inappropriate comments included, among other things, offering to follow a female employee home to teach her the right way to make love, stating "nice view" after an employee bent over, and asking an employee if she knew of anyone who wanted sex. *Id.*

[5] In his application, Stout noted that he had previously been terminated from his position at the Grand Avenue store because of a "lapse in character." Pl's App. at 43.

details regarding specific allegations of sexual harassment.  *Id.*  Book informed Beimer that, apart from the prior incidents of harassment, Stout had a good work ethic and was a good worker.  Beimer also contacted the Ankeny store director, Ken Butcher, who generally had good things to say about Stout and gave him a good report.   Def's App. at 40.

While there was some concern about Stout due to his prior history of sexual harassment, *see* Pl's App. at 27, Beimer ultimately interviewed Stout for the manager position because of his previous bakery management experience.  Pl's App. at 13.  During the interview, Beimer informed Stout that he was aware of his prior acts of harassment.  Def's App. at 44b p. 35.  Mr Beimer explained in the interview that such behavior would not be tolerated and that any incident of sexual harassment would result in termination.  *Id.*

Stout was hired as the Valley West store's bakery department manager on or about December 11, 2006.  Beimer claims that he made the decision to hire Stout over other applicants because of representations that Stout was a good bakery manager and because he believed Stout could do the job.  Pl's App. at 17, 19.  Upon being hired, Stout was again advised that any incidents of inappropriate behavior toward female co-workers would result in his immediate termination.  Def's App. at 34.  Beimer claims that he would not have hired Stout if there had been any further complaints of harassment or inappropriate conduct following his discharge from the Grand Avenue store.  Def's App. at 40; Pl's App. at 18.

C.  Facts Regarding Defendant's Harassment Policy, Training, and Prevention

At all times relevant to this dispute, defendant had an anti-harassment and nondiscrimination policy and procedure included in its Employee Handbook and posted in the Valley West store's break room.  Def's App. at 20-21, 35.  This policy contains an anti-

retaliation provision, and identifies multiple individuals to whom discrimination or harassment can be reported, including the "department head, assistant store director, manager store operations, manager perishables, manager general merchandise, store director, Hy-Vee's Vice President of Human Resources, or to any other Hy-Vee vice president." Def's App. at 21. Plaintiff received a copy of this policy during her new employee orientation, Def's App. at 18, and acknowledges that she was aware of it. Def's App. at 6 pp. 28-29. Plaintiff further understood that she could report acts of sexual harassment during her employment at any time to Beimer or Boney per the terms of the policy. Def's App. at 7 p. 30.

All of defendant's supervisory employees are required to take a professionally prepared online training program concerning what constitutes illegal harassment and discrimination and how to address employee complaints. Def's App. at 35. Stout was certified as having completed his training in this regard on March 20, 2005. Def's App. at 49. Stout had also participated in Sexual Harassment Training for Management and Supervisory Employees in August and September of 2001. Def's App. at 50.

During Stout's employment at the Valley West store, Beimer regularly monitored department managers by walking through the departments unannounced to check up on employees and to visit with them about their day. Def's App. at 45 p. 42. Beimer asserts that during his visits to the bakery department, he never witnessed any comments or conduct by Stout that caused him to believe or suspect that Stout might be harassing female employees. Def's App. at 46 p. 45. Beimer further claims that no employee ever said anything to him regarding Stout prior to plaintiff's allegations of harassment that caused him to be concerned. Beimer admits in his deposition, however, that he "probably" did not visit the bakery department for the

specific purpose of monitoring Stout for sexual harassment, and that he never specifically asked other employees if they had complaints about Stout. Def's App. at 45 p. 43.

## II.     APPLICABLE LAW AND DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir. 1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir. 1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248. "As to materiality, the substantive law will identify which facts are material . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"Summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted). Summary judgment should not be granted "unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Id.* (citations omitted).

B.  Governing Law

Plaintiff brings her action under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. 42 U.S.C. §§– 2000(e) *et seq.*, and under the Iowa Civil Rights Act ("ICRA"), Iowa Code §§ 216.1 *et seq,* alleging that defendant maintained a sexually hostile work environment. The parties agree that plaintiff's hostile work environment claim under the ICRA is evaluated under the same standards as her parallel claim under Title VII. *See, e.g., Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999) (citing *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997)). The Court will therefore analyze these state and federal claims together.

In order to establish a prima facie case for sexually hostile work environment, an employee must show: (1) that she is within a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Sandoval v. Am. Bldg. Maint. Indus., Inc.,* 578 F.3d 787, 801 (8th Cir. 2009); *Jenkins v. Winter,* 540 F.3d 742, 748 (8th Cir. 2008). In the case of harassment by a supervisor, however, it is unnecessary for a plaintiff to demonstrate that the employer knew or should have known of the harassment; an employer is vicariously liable for a supervisor's acts of harassment if the plaintiff has suffered a tangible employment action, or in the absence of a tangible employment action, if the employer has failed to demonstrate its entitlement to the *Ellerth-Faragher* affirmative defense." *Weger v. City of Ladue,* 500 F.3d 710, 718 (8th Cir. 2007); *accord Brenneman v. Famous Dave's of America*, *Inc., 507 F.3d 1139, 1144 (8th Cir. 2007). The affirmative defense is satisfied by showing that "(1)

the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm." *Id.* at 1145 (citations omitted).

  C. Prima Facie Case

  In the present case, defendant argues that plaintiff cannot satisfy the elements of her prima facie case because she cannot demonstrate that the alleged harassment at issue affected a term, condition, or privilege of her employment.  To make such a showing, plaintiff must demonstrate that her workplace was "permeated with 'discriminatory intimidation, ridicule and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1380 (8th Cir. 1996).  In determining whether plaintiff's working environment was sufficiently hostile, the Court must examine the totality of the circumstances, including "'whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance.'" *Brenneman,* 507 F.3d at 1143 (quoting *Nitsche v. CEO of Osage Valley Elec. Coop.,* 446 F.3d 841, 845 (8th Cir. 2006).  "A sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton* 524 U.S. 775, 787 (1998); *accord  Henderson v. Simmons Foods Inc.,* 217 F.3d 612, 616 (8th Cir. 2000).

  Viewing the record in a light most favorable to plaintiff, the Court finds that plaintiff has

presented sufficient evidence of offensive conduct to create a triable issue for the jury. Plaintiff alleges that she was subjected to inappropriate comments and conduct as described above "continuously throughout the day" on a "daily basis" for the duration of her employment, a period of nearly four months. Pl's App. at 44, ¶ 4.[6] While some of the instances of conduct and comments may have been, as defendant describes, "innocuous," others were far more severe, involving implicit requests for sexual favors or relations, a comment about killing plaintiff's husband, a request that plaintiff ingest a substance that acted liked a date rape drug, and an incident where plaintiff was cornered in a freezer and made to fear for her safety. A reasonable juror could certainly find that much of the conduct described in this action would be intimidating,[7] or at a minimum, humiliating. Plaintiff asserts that the conduct complained of was severely upsetting and that it affected her work performance. "[O]nce there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Eich v. Board of Regents for Cent. Missouri State University,* 350 F.3d 752, 761 (8th Cir. 2003) (citing *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir. 1998). The Court finds that plaintiff has met her burden of establishing a genuine issue of material fact as to whether she can satisfy the prima facie elements of her hostile work environment claim.

---

[6]It should also be noted that there is a question of fact as to whether other employees were subjected to acts of harassment at the hands of Stout. S*ee* Pl's App. at 45, ¶ 3; Pl's App. at 46. Evidence of sexual harassment directed at employees other than the plaintiff is "relevant to show pervasiveness of the hostile environment." *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 838 (8th Cir. 1998) (citing *Hall v. Gus Const. Co.,* 842 F.2d 1010, 1015 (8th Cir.1988)).

[7]The fact that the alleged harassment was instigated by a supervisor also increases the probability that the situation was an intimidating one. *Brenneman v. Famous Dave's of America, Inc.,* 410 F. Supp. 2d 828, 840 (S.D. Iowa 2006).

D.      Affirmative Defense

Defendant argues that even if plaintiff can satisfy the prima facie elements of her claim, it is entitled to summary judgment because the elements of the *Ellerth-Faragher* affirmative defense are satisfied as a matter of law.[8] In assessing whether defendant has established its entitlement to the *Ellerth-Faragher* affirmative defense, the Court must first determine whether defendant "exercised reasonable care to prevent sexual harassment," and further whether it acted "promptly" to correct any sexual harassment that did occur. *Brenneman,* 507 F.3d at 1145. Defendant asserts that it has met its burden in this regard because it has a facially valid anti-harassment and discrimination policy that was made known to all employees, including plaintiff, and because it promptly terminated Stout's employment following plaintiff's report of harassment. Plaintiff asserts, however, that material issues of fact exist as to whether defendant exercised reasonable care to prevent sexual harassment in the work place.

Although "distribution of a valid antiharassment policy provides 'compelling proof' that [an employer] exercised reasonable care in preventing and promptly correcting sexual harassment, it is not dispositive." *Weger,* 500 F.3d at 719 (internal citation omitted); *accord* B*renneman,* 507 F.3d at 1145. Other factors may support a finding of unreasonableness despite the distribution of an anti-harassment policy to employees. For example, the Eighth Circuit has found "a sexual harassment policy insufficient because it did not require supervisors, who are notified of an employee being sexually harassed, to report that information to those in a position to take corrective action." *Weger,* 500 F.3d at 719 (citing *Varner v. Nat'l Super Mkt., Inc.,* 94

---

[8]Plaintiff concedes that she did not suffer a tangible employment action and that the *Ellerth-Faragher* affirmative defense is consequently applicable. Pl's Memorandum of Authorities at 19, n.11.

13

F.3d 1209, 1213-14 (8th Cir. 1996).  Conversely, the Eighth Circuit has found an employer's actions reasonable where the employer distributed an anti-harassment policy to employees containing a non-retaliation provision, flexible reporting procedures, and listed multiple individuals to whom acts of harassment could be reported who were in a position to take corrective action.  *See id*; *Brenneman,* 507 F.3d at 1145; *Gordon v. Shafer Contracting Co., Inc.,* 469 F.3d 1191, 1195 (8th Cir. 2006); *Williams v. Mo. Dept. of Mental Health* 407 F.3d 972, 976 - 977 (8th Cir. 2005).  Defendant's anti-harassment policy conforms with the later type of policy. Def's Statement of Facts ¶ 8.

     Plaintiff argues that, notwithstanding the existence of defendant's anti-harassment policy, the prevention prong of the *Ellerth-Faragher* affirmative defense cannot be satisfied in this case because (1) defendant failed to specifically monitor Stout for sexual harassment, and (2) Stout was not provided preventative training following his rehiring at the Valley West store.  In response, defendant points to the Eighth Circuit's decision in *Weger*, in which the court specifically rejected a similar argument.  *See Weger,* 500 F.3d at 720 ("Plaintiffs have offered no authority from this court that these failures render the Department's harassment prevention efforts unreasonable.").  The court in *Weger*, however, was not confronted with a factual situation similar to this case.  It remains unanswered whether such failures would be sufficient to generate an issue of fact where an employer has rehired or retained a known sexual harasser.  If an employer hires or retains a known sexual harasser to serve in a managerial role, additional diligence may be required, above and beyond posting a facially valid anti-harassment policy, to ensure that the harasser does not re-offend.  *See Munroe v. Compaq Computer Corp.,* 229 F. Supp. 2d. 52, 64 (D.N.H. 2002).

At least one district court has held that an employer's retention of a known sexual harasser, coupled with evidence suggesting that the employer failed to exercise reasonable care to prevent further harassment by such individual, can support a finding that an employer's prevention efforts were unreasonable. *Id.* The Court similarly believes that the crucial inquiry in this case is not whether defendant's actions were unreasonable because it rehired a known sexual harasser, but whether defendant failed to take steps reasonably calculated to prevent further harassment by Stout following the reports of inappropriate conduct at the Grand Avenue store. If defendant took steps reasonably calculated to end further harassment, even if such steps ultimately proved unsuccessful, then it has satisfied the prevention prong of the *Ellerth-Faragher* affirmative defense. *See Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1036 (7th Cir. 1998) ("[T]he law does not even require that the employer's actions prevent harassment, but merely that its response was reasonably likely to prevent future harassment.").

In the present case, the record demonstrates that Stout was discharged from his position as a bakery manager at the Grand Avenue store on October 20, 2005 in direct response to allegations that he was sexually harassing female employees. Stout was thereafter rehired to work as defendant's bakery manager at the Valley West store on December 11, 2006. There is no dispute that Stout was not provided further training regarding sexual harassment following defendant's decision to rehire him. Furthermore, a reasonable juror could find that defendant did not adequately monitor Stout for signs of sexual harassment even though there was obviously some concern about his propensity to engage in inappropriate conduct following his return to

work. Pl's App. at 27; Def's App. at 45 p. 43.[9]   While it is true that Beimer warned Stout that sexual harassment would not be tolerated and that any further inappropriate conduct on his behalf would result in immediate termination, there is at least some material evidence in the record to support an argument that defendant did not act reasonably to prevent further harassment in light of Stout's employment history.  Stout's history as a sexual harasser creates a unique factual inquiry as to the adequacy of defendant's prevention efforts that should be resolved by a jury, and not as a matter of law.[10]

---

[9]Beimer stated during his deposition that part of his monitoring activities involved monitoring for sexual harassment.  Pl's App. at 31.  However, when Beimer was later asked whether he would "show up in Stout's department specifically for purposes of monitoring him for sexual harassment," he stated "[p]robably not."  Def's App. at 45 p. 43.  Whether defendant did in fact monitor Stout's conduct for signs of sexual harassment is a question of fact to be resolved by the jury.

[10]Plaintiff seeks to prove defendant's liability in this case on theories of both direct negligence and vicarious liability.  Court's discussing direct negligence as a viable theory of employer liability in sexual harassment cases have recognized that liability may be imposed where an employer "knew or should have known about the conduct and failed to stop it."  *See, e.g., Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 759 (1998); *accord Wright-Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1270 (10th Cir. 1998).  The Eighth Circuit has generally discussed this form of liability in cases of non-supervisor harassment, focusing on whether an employer had actual or constructive knowledge of the conduct alleged to create a hostile working environment.  *See, e.g., Sandoval v. Am. Bldg. Maint. Indus., Inc.,* 578 F.3d 787, 801 (8th Cir. 2009) ("Title VII adopts ordinary tort principles of negligence in evaluating employer liability for sexual harassment, and an employer may be negligent although it did not have actual notice if it reasonably should have anticipated the harassment, i.e., if it had constructive notice."(internal citation omitted)).  To the extent that the issue of actual or constructive notice is at issue in this case, the Court believes that it is better analyzed in the context of the *Ellerth-Faragher* affirmative defense analysis.  *See Weger*, 500 F.3d at 722 (discussing plaintiff's constructive knowledge argument in the context of the *Ellerth-Faragher* affirmative defense analysis without deciding whether the issue of constructive notice is relevant in assessing the promptness of an employer's correction efforts).  After all, a finding that defendant had notice of Stout's harassment prior to plaintiff's initial report would indicate that defendant did not act reasonably in promptly stopping it.  Because the Court has already found that there is a material issue of fact as to whether the first element of the *Ellerth-Faragher* affirmative defense is satisfied, however, it need not address the issue of actual or constructive notice at this time.

III. CONCLUSION

For the reasons outline above, defendant's motion for summary judgment is denied.

IT IS ORDERED.

Dated this 16th day of February, 2009.

_____
RONALD E. LONGSTAFF, Senior Judge
United States District Court

.